OPINION OF THE COURT
Hancock, Jr., J.
Defendant Edward Mugavero has been sued for the physical and emotional injuries sustained by a six-year-old girl and a nine-year-old boy upon whom he committed acts of sodomy and sexual abuse while the children were in the care of his wife as baby-sitter. His wife, defendant Ann Mugavero, has been sued for her negligence in permitting these acts. The Mugaveros have demanded that their homeowner’s insurance carrier, plaintiff Allstate, afford them a defense and indemnify them from whatever damages may be recovered in the lawsuit. Allstate maintains that there is no coverage. It has brought the instant declaratory judgment action to resolve the dispute. The decisive question is whether the damages sought fall within the policy exclusion for bodily injury "intentionally *157 caused by an insured person”. Supreme Court and the Appellate Division have held that the acts alleged are not excluded. For reasons which follow, we disagree and hold that there is no coverage.
I
The lawsuit against the Mugaveros was brought by defendant Ellen B., individually and on behalf of her children, the infant defendants Christian, age nine at the time of the last occurrence alleged, and Theresa, then age six. In her complaint, Ellen B. pleaded three causes of action against defendant Edward Mugavero. In the first, she alleged that, at various times from 1979 through April 1984, defendant Mugavero "with force and violence, and against the consent of the infant [plaintiffs] intentionally and without provocation, assaulted, sodomized and sexually abused” her children, causing them to "suffer * * * greatly in mind and body”; in the second, that Mugavero committed these intentional actions "without intending the resultant serious injuries”; and in the third, that he committed such acts of assault, sodomy and sexual abuse "negligently and carelessly, and with wanton disregard of others”. A fourth cause of action against defendant Ann Mugavero is based on her negligence in caring for the children. Ellen B.’s verified complaint and her sworn bill of particulars describe forcible acts of sexual abuse allegedly practiced on Christian and Theresa by Edward Mugavero, including acts of anal and oral sodomy.
In Allstate’s declaratory judgment action, the Mugaveros moved for summary judgment. They argued that because Ellen B.’s complaint against them contained allegations of negligence and of unintended injuries from intentional conduct, the policy exclusion for "bodily injury * * * intentionally caused” did not apply. Under the established rule that an insurer’s duty to defend is broader than its duty to indemnify, they contended that Allstate was obligated to provide them with a defense.
Allstate cross-moved for summary judgment based, among other things, on the verified pleadings in the underlying damage action and on the sworn depositions of Christian and Theresa depicting in graphic detail acts of sexual child molestation. Allstate maintained that an intent to injure was infer-able as a matter of law from the very nature of the actions and that Mugavero’s alleged conduct, therefore, fell within the *158 policy exclusion for conduct intentionally causing harm. In opposition to Allstate’s motion, the Mugaveros submitted an affidavit of their attorney stating that "Edward Mugavero has consistently denied the allegations of the infant plaintiffs” and that the "sodomy and sexual abuse indictment against [him] was dismissed on motion of the District Attorney as a result of plea negotiations which resulted in a guilty plea to an unrelated and far less serious crime”. The Mugaveros submitted no proof in evidentiary form by affidavit or otherwise relating to the alleged acts of sexual abuse.
Ellen B. joined the Mugaveros in seeking summary judgment. To support her contention that Edward Mugavero did not intend to harm the children through his intentional actions, she annexed a copy of a statement made by Edward Mugavero to the police upon his arrest for sexual assault stating, inter alia, that he was "comforting the children when he was hugging them”.
Supreme Court denied Allstate’s cross motion, declared that Allstate was obligated to provide the Mugaveros with a defense, and held that the question of indemnification should be reserved until the trial of the action (see, Allstate Ins. Co. v Mugavero, 142 Misc 2d 361). The court reasoned that an insurer could not be relieved of the duty to defend its insured under an intentional harm exclusion where the complaint against the insured contains a cause of action in negligence and one alleging that the acts, while intentional, were not intended to cause injury. It rejected Allstate’s argument that intent to injure was inherent in the intentional acts of sexual abuse committed by Edward Mugavero.
In its affirmance with a divided court, the Appellate Division essentially followed the reasoning of Supreme Court (see, Allstate Ins. Co. v Mugavero, 166 AD2d 474, 474-477). Like Supreme Court, the majority relied on the statement in our decision in Public Serv. Mut. Ins. Co. v Goldfarb (53 NY2d 392, 399) to the effect that an insured may seek indemnity for unintentional injuries resulting from intentional acts. The dissenting Justice voted to grant summary judgment to Allstate, stating that there can be "no reasonable argument that the injuries resulting from the sexual abuse of children could be anything but intended” and noting that "[t]his idea has taken hold in almost all other jurisdictions that have dealt with this issue” (see, 166 AD2d 474, 477-492, supra [Balletta, J., dissenting opn]). Plaintiff Allstate appeals by leave of the Appellate Division. We now reverse.
*159 II
The critical question is whether the harm that resulted to Ellen B.’s children from the sexual assaults allegedly committed on them by Edward Mugavero could have been other than harm “intentionally caused” within the meaning of the policy exclusion. For the answer, we look to the pleadings in Ellen B.’s action and limit our examination to the nature of the conduct of Edward Mugavero, as it is there described (see, Ruder & Finn v Seaboard Sur. Co., 52 NY2d 663, 669-670; Lionel Freedman, Inc. v Glens Falls Ins. Co., 27 NY2d 364, 368). Although Mugavero denies the allegations of the complaint, we must assume — for the purpose of determining coverage — that what is alleged actually happened. Allstate agrees that it is obligated by its policy to provide a defense unless it can “demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation” (International Paper Co. v Continental Cos. Co., 35 NY2d 322, 325).
The pleadings depict acts committed by an adult upon young children which, if proven, would constitute, among other crimes, sodomy in the first degree (Penal Law § 130.50 [3]), a class B felony, for engaging in deviate sexual intercourse[1] with a child under the age of 11, and sexual abuse in the first degree (Penal Law § 130.65 [3]), a class D felony, for subjecting a child under the age of 11 to sexual contact.[2] As noted, Edward Mugavero denies the actual occurrence of these acts. But neither he nor any other party contends that the sexual conduct described in the first and second causes of action, assuming that it did occur, could have been anything other than intentional. Rather defendants — adverting to the established rule that the duty to defend is broader than the *160 duty to indemnify (see, Ruder & Finn v Seaboard Sur. Co., supra, at 669) — argue that Allstate must provide a defense because Ellen B.’s complaint alleges: (1) that the intentional actions resulted in unintended harm (the second cause of action) and (2) alternatively, that Mugavero’s actions were the result of his negligence and carelessness (the third cause of action). We reject both contentions.
A
Defendants’ argument that Allstate must defend for unintended injuries from intentional conduct focuses on the wording of the policy exclusion: "We do not cover bodily injury or property damage intentionally caused by an insured person” (emphasis added). Defendants emphasize that an act which is intentional (e.g., lending a car to an underaged, unlicensed driver [see, Messersmith v American Fid. Co., 232 NY 161]) does not mean that the harm that ensues (the accident and resultant injuries) was intended. Clearly more than a causal connection between the intentional act and the resultant harm is required to prove that the harm was intended. Allstate acknowledges this but counters that in the exceptional case of an act of child molestation, cause and effect cannot be separated; that to do the act is necessarily to do the harm which is its consequence; and that since unquestionably the act is intended, so also is the harm. We think the argument finds support in logic and in the generally accepted conception of harm as being inherent in the act of sexually abusing a child.
Nowhere is the societal understanding that the harm from such conduct is inseparable from its performance more clearly demonstrated than in the degree of seriousness which the Legislature attaches to sex crimes involving young children. When the victim is a child under the age of 11, the Legislature has declared that acts of deviate sexual intercourse and sexual contact constitute the serious felonies of first degree sodomy and first degree sexual abuse. The perpetrator’s guilt for such crimes is established merely by proof that the actions occurred, irrespective of whether force was used, the child manifested consent, or the resultant injuries were intended.
Nevertheless, defendants contend that the exclusion does not apply because it requires that the harm be intended rather than the act causing it. And they insist that theoreti *161 cally the perpetrator can lack the subjective intent of causing harm while committing an act of sodomy or sexual abuse on a young child. But this semantic argument ignores the realities of the often severe emotional and psychological damage that results from acts of sexual abuse, regardless of their motivation or nature (see, e.g., Wakefield and Underwager, Accusations of Child Sexual Abuse, at 339-352; US Dept of Justice, Protecting Our Children: The Fight Against Molestation, A National Symposium, at 133-139 [Oct. 1-4, 1984]; US Dept of Health and Human Servs, Child Sexual Abuse: Incest, Assault and Sexual Exploitation, at 5-7; Porter, Blick and Sgroi, Treatment of the Sexually Abused Child, reprinted in Sgroi, Handbook of Clinical Intervention in Child Sexual Abuse, at 109-112; Governor’s Commn on Domestic Violence, Report to Governor on Legislation to Reform Status Sex Offense Laws, at 9-11). To accept defendants’ proposition would be abhorrent to the legislative policy reflecting the heightened awareness of the serious consequences of child sexual abuse (see, sources cited, supra), the need for preventive measures and the public perception that molesting a child without causing harm is a virtual impossibility. We are not persuaded by the suggestion in Ellen B.’s brief that Mugavero’s actions should be viewed as less injurious because his motives were allegedly benign and his actions assertedly undertaken out of a desire to "comfort * * * the children”.
We believe, moreover, that the ordinary person would be startled, to say the least, by the notion that Mugavero should receive insurance protection for sexually molesting these children, and thus, in effect, be permitted to transfer the responsibility for his deeds onto the shoulders of other homeowners in the form of higher premiums (see, Allstate Ins. Co. v Mugavero, supra, at 480 [dissenting opn]; Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., 60 NY2d 390, 398). As one court has put it: "[t]he average person purchasing homeowner’s insurance would cringe at the very suggestion that [the person] was paying for such coverage. And certainly [the person] would not want to share that type of risk with other homeowner’s policyholders” (Rodriguez v Williams, 42 Wash App 633, 636, 713 P2d 135, 137-138, affd 107 Wash 2d 381, 729 P2d 627). For these reasons, we hold that harm to Ellen B.’s children was inherent in the nature of the acts alleged and that whatever injuries resulted were, as a matter of law, "intentionally caused” within the meaning of the policy exclusion. Our decision accords with the conclusions of almost all of the State *162 and Federal courts which have decided identical or very similar coverage questions involving claims arising out of sexual abuse of children (see, App Div dissenting opn [166 AD2d, at 490-492, supra], and cases cited; 7A Appleman, Insurance Law and Practice § 4501.09, 1991 Pocket Part, at 72-73, 76-79, n 10.10, and cases cited [Berdal ed]).
Our holding is not contrary to Public Serv. Mut. Ins. Co. v Goldfarb (53 NY2d 392, supra), as defendants maintain. There, the insured was a dentist who was sued for sexual abuse of an adult woman in the course of providing dental treatment. The policy was a "Dentist’s Professional Liability Policy” which covered punitive as well as compensatory damages arising from dental services and " 'based upon * * * [mjalpractice, error, negligence or mistake, assault, slander, libel [or] undue familiarity’ ” (id., at 398 [emphasis added]). The court held that the policy specifically covered damages "arising out of unlawful or inappropriate physical contact which occurs during the course of dental treatment” (Public Serv. Mut. Ins. Co. v Goldfarb, supra, at 398) but — despite the broad language of the coverage — concluded that as a matter of public policy indemnification for punitive damages or intentional injuries would not be permitted (id., at 399-400). Our holding in Public Service would, under the unusual language of that professional policy, have permitted indemnification for unintended injuries to an adult patient during treatment from an intended "assault” or act of "undue familiarity”. But that holding has no bearing on the entirely different question here, involving a specific exclusion for intended injuries in a standard homeowner’s policy: i.e., whether intentional acts of sexual abuse on small children can be viewed separately from the harm inherent in those acts.
B
We are not persuaded by defendants’ alternative argument that the allegations of negligence in Ellen B.’s third cause of action require Allstate, at the least, to defend the Mugaveros. It is settled law that an insurer must afford its insured a defense unless it can show that the allegations of the complaint put it solely within the policy exclusion (International Paper Co. v Continental Cas. Co., supra, at 325). But the analysis depends on the facts which are pleaded, not the conclusory assertions (see, Goldberg v Lumber Mut. Cas. Ins. Co., 297 NY 148, 154). Thus, where the theory of liability on *163 which the injured party is proceeding cannot be determined from the facts pleaded, the insurer must defend (see, Spoora-Lsher Co. v Aetna Cas. & Sur. Co., 39 NY2d 875, 876-877). But where it can be determined from the factual allegations that “no basis for recovery within the coverage of the policy is stated in the complaint, [a court] may sustain [the insurer’s] refusal to defend” (Lionel Freedman, Inc. v Glens Falls Ins. Co., 27 NY2d 364, 368, supra; see, e.g., New York Cas. Ins. Co. v Ward, 139 AD2d 922 [summary judgment granted to insurer where insured sued for injuries caused by assault notwithstanding conclusory allegations of negligence]; Contracting Plumbers' Coop. Restoration Corp. v Hartford Acc. & Indem. Co., 59 AD2d 921, 922 [no coverage where facts pleaded put occurrences outside locations covered by policy despite general “shotgun allegations of negligence”]).
Here, Ellen B.’s third cause of action — after repleading the factual allegations of intentional, forceful and violent assault, sodomy and sexual abuse contained in the first and second causes of action — sets forth the totally inconsistent assertion that these intentional acts were committed “negligently and carelessly, and with wanton disregard of others”. No different or additional facts are pleaded. Nor do any of defendants’ motion papers suggest that there is the least evidentiary support for the conclusory characterization of Mugavero’s conduct as negligent or provide an explanation of how the intrinsically intentional acts of assault, sodomy and sexual abuse could be negligently performed. We agree with plaintiff Allstate that the third cause of action contains nothing which brings the complaint within the coverage of the policy (see, Lionel Freedman, Inc. v Glens Falls Ins. Co., supra, at 368).
Ill
Finally, defendants contend that there should, at least, be coverage for the claim asserted against Ann Mugavero in Ellen B.’s fourth cause of action based on her separate acts of negligence in caring for the children. We do not agree.
The Allstate homeowner’s policy provides, under the heading "Exclusions — Losses We Do Not Cover”:
“We do not cover bodily injury or property damage intentionally caused by an insured person.” (Emphasis added.)
What is excluded in this provision is a specifically defined class of injury — i.e., one intentionally caused by an *164 insured person,[3] Inasmuch as the injuries giving rise to the claims here were caused by Edward Mugavero — an insured person — these injuries are not covered.
Defendants argue that because Ellen B.’s complaint does not allege intentional harm caused by Ann Mugavero — also an insured person under the policy — there should be coverage as to her. Under their approach, each insured person is viewed separately and if that particular person has not caused intentional injury, the exclusion as to that person does not apply. The argument depends upon reading the exclusionary clause as if it applied to intentional injuries caused by the particular "insured person” whose coverage is in question, instead of by any "insured person” under the policy. In other words, defendants interpret the exclusion as if it read "caused by the insured person” instead of "by an insured person”. But this is not what the policy says. We agree with the Federal court in Allstate Ins. Co. v Roelfs (698 F Supp 815 [D Alaska]) — interpreting an identical homeowner’s policy — that "the exclusion * * * clearly and unambiguously excludes from coverage all claims which arise out of the intentional acts of any one of the insureds” (id., at 822 [emphasis added]).
Although no New York appellate court has previously addressed the question, other courts have interpreted this or similar exclusionary clauses as we do (see, Allstate Ins. Co. v Gilbert, 852 F2d 449 [9th Cir]; Allstate Ins. Co. v McCranie, 716 F Supp 1440 [SD Fla], affd sub nom. Allstate Ins. Co. v Manning, 904 F2d 713 [11th Cir]; Allstate Ins. Co. v Roelfs, supra; Allstate Ins. Co. v Foster, 693 F Supp 886 [D Nev]; Travelers Ins. Co. v Blanchard, 431 So 2d 913 [La Ct App]). In contrast, exclusionary clauses barring coverage of intentional harm by "the insured”, rather than by "an insured”, have been held to exclude coverage only for harm caused by the particular insured committing the act (see, e.g., Pawtucket Mut. Ins. Co. v Lebrecht, 104 NH 465, 190 A2d 420).
For these reasons, the order should be reversed, with costs, the motion by the defendants for summary judgment denied, plaintiff’s cross motion for summary judgment granted and judgment granted to Allstate declaring that it has no obligation to defend either Edward Mugavero or Ann Mugavero in the underlying action.

. "Deviate sexual intercourse” is defined in Penal Law § 130.00 (2) as:
"2. 'Deviate sexual intercourse’ means sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva.”

. "Sexual contact” is defined in Penal Law § 130.00 (3) as:
"3. 'Sexual contact’ means any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing.”

. " 'Insured Person’ — means you and, if a resident of your household, any relative and any dependent person in your care” (Allstate policy).